**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN W. HANCOCK, JR.,
INCORPORATED,

*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent,*

and

UNITED STEELWORKERS OF AMERICA,
AFL-CIO CLC,

*Intervenor.*

No. 02-2012

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

and

UNITED STEELWORKERS OF AMERICA,
AFL-CIO CLC,

*Intervenor,*

v.

JOHN W. HANCOCK, JR.,
INCORPORATED,

*Respondent.*

No. 02-2183

On Petition for Review and Cross-application
for Enforcement of an Order
of the National Labor Relations Board.
(11-CA-18716)

Argued: May 8, 2003

Decided: September 3, 2003

Before LUTTIG and MICHAEL, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Petition for review denied and enforcement granted by unpublished
per curiam opinion.

---

**COUNSEL**

**ARGUED:** James Francis Edwards, Jr., EDWARDS, BALLARD,
BISHOP, STURM, CLARK & KEIM, P.A., Spartanburg, South Carolina, for Hancock. David Arthur Fleischer, Senior Attorney,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
Board. **ON BRIEF:** Jeffrey A. Lehrer, EDWARDS, BALLARD,
BISHOP, STURM, CLARK & KEIM, P.A., Spartanburg, South Carolina, for Hancock. Arthur F. Rosenfeld, General Counsel, John F.
Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate
General Counsel, Aileen A. Armstrong, Deputy Associate General
Counsel, NATIONAL LABOR RELATIONS BOARD, Washington,
D.C., for Board.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This case, which arises under the National Labor Relations Act
(NLRA), 29 U.S.C. § 151 et seq., involves a union organizing campaign at the John W. Hancock, Jr., Inc. (Hancock) plant in Salem,
Virginia. The General Counsel of the National Labor Relations Board
(the Board) charged Hancock (i) with violating § 8(a)(1) of the NLRA

when it attempted to coerce opposition to the union by threatening to close the plant and fire employees and (ii) with violating § 8(a)(3) by firing two employees because of their support of the union. After a hearing an administrative law judge found that Hancock's actions violated the NLRA. The Board adopted most of the ALJ's findings and ordered Hancock to cease and desist from the unlawful conduct, offer the unlawfully discharged employees reinstatement with back pay, and post copies of a remedial notice. Hancock filed a petition for review, and the Board filed a cross-application for enforcement. Because the Board's findings are supported by substantial evidence, we deny the company's petition and enforce the Board's order.

I.

Hancock's Salem plant, where the company makes steel joists and racks, has been the subject of two previous unsuccessful organizing drives by the United Steelworkers of America, AFL-CIO. The campaign at issue here started in March 2000. On May 21, 2000, the union held a meeting off-site. Beginning the next day, management responded with anti-union speeches and meetings. On June 5, 2000, two union supporters, Larry Pugh and Paul Akers, were fired, ostensibly for being on company premises off-shift and without permission. On June 20 the union filed an unfair labor practices charge with the Board. The General Counsel issued a complaint alleging four violations of the Act. The complaint alleged that the company had committed unfair labor practices by threatening employees with termination, by threatening to close the plant, and by interrogating an employee about his union involvement. It also alleged that the company had unlawfully terminated Pugh and Akers because of their union activity. Following a hearing the ALJ found that the company had committed each of the four violations. The Board upheld the ALJ's decision and adopted his findings on three of the violations (it dismissed the unlawful interrogation charge). The company petitions for review of the Board's decision on the three violations it upheld; the Board seeks enforcement of its order.

II.

We affirm the Board's factual findings (in this case, the adopted findings of the ALJ) as long as they are "supported by substantial evi-

dence on the record considered as a whole." 29 U.S.C. § 160(e). *See also Medeco Sec. Locks, Inc. v. NLRB*, 142 F.3d 733, 742 (4th Cir. 1998). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alpo Petfoods, Inc. v. NLRB*, 126 F.3d 246, 250 (4th Cir. 1997) (citation omitted). We "may [not] displace the Board's choice between two fairly conflicting views." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). We accept factual findings based on credibility determinations unless there are "exceptional circumstances." *Fieldcrest Cannon, Inc. v. NLRB*, 97 F.3d 65, 69 (4th Cir. 1996) (citation omitted). Exceptional circumstances exist when "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (citation omitted).

III.

A.

An employer's use of threats of plant closure to coerce employees to reject a union is an unfair labor practice barred by § 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1). *NLRB v. Nueva Eng'g, Inc.*, 761 F.2d 961, 966 (4th Cir. 1985). An employer's statement is not an unlawful threat if it is an objective "prediction as to the precise effects [the employer] believes unionization will have on [the] company . . . [and] convey[s] an employer's belief as to demonstrably probable consequences beyond [its] control." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969). On the other hand, if the employer is saying it will close a plant upon unionization "solely on [its] own initiative for reasons unrelated to economic necessities," the statement may be a threat. *Id.*; *see also Be-Lo Stores v. NLRB*, 126 F.3d 268, 285-86 (4th Cir. 1997). The ALJ and the Board found that Hancock, through manager Chris Moore, threatened employee David Waller with plant closure if the employees unionized. Hancock argues that this finding is not supported by substantial evidence.

Waller testified that Moore told him that if the employees voted to bring in the union, the company's shareholders would respond by shutting down the side of the plant that makes steel racks "because we have lost some money for so many consecutive years." Moore testi-

fied that he never mentioned the union. The ALJ accepted Waller's version and found that Moore had threatened plant closure in violation of § 8(a)(1). Hancock first notes slight variations in Waller's accounts of Moore's statement at different points in his testimony and argues that the ALJ should not have credited Waller's version over Moore's in the face of this inconsistency. The variations in Waller's testimony are too slight, however, for us to overturn the ALJ's credibility determination. *See Fieldcrest Cannon*, 97 F.3d at 69-70.

Hancock further argues that because the plant's ongoing lack of profitability was, in Waller's words, "a big part" of what Moore said, Moore's statement was not necessarily a threat. The statement was, the company says, a simple prediction about the plant's future and was therefore not a violation of § 8(a)(1). *See Gissel*, 395 U.S. at 618-19. The ALJ offered a plausible basis for the conclusion that the statement was a coercive threat: Moore's statement acknowledged that the plant had been unprofitable for some time, but would only be shut down if the union came in; unionization, not unprofitability, was the event that would precipitate the closure. Hancock offers other plausible interpretations of Moore's statement, but it is the Board's job, not ours, to choose among "fairly conflicting views" of the evidence. *See Universal Camera*, 340 U.S. at 488. The Board adopted the ALJ's finding that Moore's statement was a threat of closure in violation of § 8(a)(1), and we will not disturb that finding. *See id.*

## B.

Threatening an employee with discharge in order to coerce him to reject a union also violates § 8(a)(1). *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1046 (4th Cir. 1997). The ALJ found (1) that on June 6, 2000, the day after Akers and Pugh were discharged, manager Roger Sloan told employee Preston Connor that Akers and Pugh had been let go because of their union activity and (2) that this statement constituted an unlawful threat of termination. The Board adopted these findings.

Sloan denied making the statement about Akers and Pugh, but the ALJ credited Connor's testimony that the statement was made. We will not disturb that credibility determination. *Fieldcrest Cannon*, 97 F.3d at 69-70. Hancock argues that even if Sloan made the statement,

he did not make a direct threat, but only reported news that he had heard from others: Sloan said, "I heard they let [Akers and Pugh] go for handing out union cards to the nightshift." "A supervisor's explicit statement to an employee that the company laid off his fellow employees because of their union activities reasonably could coerce or intimidate the remaining employees." *Grand Canyon Mining*, 116 F.3d at 1046. That Sloan cast his statement as the repetition of news he received from others does not eliminate its coercive nature. A statement is coercive for purposes of § 8(a)(1) if it "had a reasonable tendency in the totality of circumstances to intimidate." *Equitable Gas Co. v. NLRB*, 966 F.2d 861, 866 (4th Cir. 1992) (citation omitted). Under the circumstances, the ALJ was reasonable in finding that Sloan's repetition of what he had heard had a tendency to intimidate employees. The ALJ's finding, adopted by the Board, that Sloan's statement was coercive is supported by substantial evidence.

## C.

Finally, the Board found that Hancock violated § 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), by firing Pugh and Akers because of their support for the union. Pugh and Akers were union supporters who had both solicited others to sign authorization cards. Their terminations arose out of separate incidents on the night of Friday, June 2, 2000. Both Pugh and Akers worked on the day shift. That evening each of them visited the plant during the second shift in violation of company rules; both were fired on Monday, June 5. Each had his own reason for returning to the plant, but neither of them went there for union purposes. Pugh came to collect child-support payments from his wife's ex-husband, also a Hancock employee. This was Pugh's usual practice; he testified that supervisors knew he did this from time to time. A supervisor asked him to leave, and he did. About a half-hour later he returned to the plant parking lot in order to get the child-support payment as the night shift let out. He was observed in the parking lot. On Monday, June 5, he was fired for being at the plant off-shift and for insubordination because he returned after being asked to leave. Akers's story is simpler. The hot water heater at his house was broken, so he returned to the plant to shower every evening that week. On June 2 he came in fairly late, around the time Pugh was at the plant. No manager talked to Akers that evening, but on Monday he was fired for being at the plant.

Section 8(a)(3) makes it unlawful to terminate an employee on account of his union activity. *See NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 398 (1983); *Goldtex, Inc. v. NLRB*, 14 F.3d 1008, 1011 (4th Cir. 1994). When the employer's motivation for the termination may include anti-union animus as well as legitimate reasons, the Board uses a burden-shifting framework similar to that used under the civil rights laws. To prove a violation in a mixed-motive case the General Counsel must establish by a preponderance of the evidence: "1) that the employee was engaged in protected activity, 2) that the employer was aware of the activity, and 3) that the activity was a substantial or motivating reason for the employer's action." *Medeco Sec. Locks*, 142 F.3d at 742 (citing *Wright Line*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981)). A showing that the employer bore animus toward the union in general may be part of the proof that a particular termination was motivated by that animus. *See Grand Canyon Mining*, 116 F.3d at 1048. The absence of legitimate reasons for the termination may also help establish that it was motivated by anti-union animus. *Medeco Sec. Locks*, 142 F.3d at 742.

If the General Counsel proves this prima facie case, the employer may defend its action by showing that it would have made the same decision absent the anti-union animus. *Id.* Here, the ALJ found that the General Counsel proved his case. Hancock argues that substantial evidence does not support the ALJ (and the Board's) findings on the issues of the company's knowledge of Pugh's and Akers's union activities and its anti-union animus.

The ALJ's finding that the company knew Pugh was involved with the union is plainly supported by substantial evidence. The ALJ found that Chris Moore, the same manager who threatened Preston Connor with discharge, saw employee David Waller filling out a union card given to him by Pugh. Waller and Pugh had been discussing a handgun belonging to Waller and had passed the gun and card back and forth. (Although the gun was the subject of another charge that the General Counsel dropped, this incident is also relevant to establishing Hancock's knowledge and was appropriately considered by the ALJ for that purpose.) Waller's testimony was somewhat equivocal as to whether Moore arrived on the scene in time to see the union card pass between the men. But the ALJ's finding that he came upon the two in time to see Waller filling out the union card and handing it back

to Pugh is a reasonable view of the evidence and supports the conclusion that the employer knew of Pugh's union activity.

The evidence of the company's knowledge of Akers's union activity is not as strong, but is still sufficient to support the ALJ's finding. Akers himself testified that there was a rumor spread throughout the company that he and Pugh were involved with the union, though no evidence showed that any specific manager heard this rumor. However, the ALJ also relied on several facts suggesting that management would have been particularly attuned to such information at that time, bolstering the inference that information about Akers's union involvement reached management. In response to the organizing campaign, the company asked supervisors to pay close attention to activity at the plant; each of the supervisors who saw Pugh and Akers at the plant after hours admitted that they had been following those instructions. Furthermore, those supervisors also noted that they did not usually see employees returning to the plant after hours. With supervisors in this state of heightened vigilance, it is reasonable to infer that the oddity of two employees returning on the same night would at least raise suspicions of union activity. Taken together, the evidence of the company's knowledge of Akers's union activity is "adequate to support [the ALJ's] conclusion." *Alpo Petfoods*, 126 F.3d at 250 (citation omitted). Because the Board's adopted finding is supported by substantial evidence, we will not overturn it. (The Board also rested this determination in part on a negative inference drawn from Hancock's failure to call certain supervisors to testify at the hearing; the company challenges the propriety of that inference. There is sufficient evidence to support the finding without the negative inference, so we do not need to decide whether it was appropriate.)

The ALJ's finding that the company bore animus against the union is also supported by substantial evidence. The most important indications of this animus are the § 8(a)(1) violations discussed above. A § 8(a)(1) violation may be evidence of animus, *Grand Canyon Mining*, 116 F.3d at 1048, although it is not necessarily conclusive on the question, *see, e.g.*, *Alexian Bros. Med. Ctr.*, 307 N.L.R.B. 389, 390 (1992). It is not necessary that the subjects of the § 8(a)(1) violations be the same employees unlawfully terminated in violation of § 8(a)(3). *Grand Canyon Mining*, 116 F.3d at 1048. Once an employer, like Hancock, has used threats of plant closing or termina-

tion in attempts to coerce employees to reject the union, its anti-union animus is usually clear.

"[T]he absence of a legitimate basis for an employer's action may form part of the proof" that the action was motivated by anti-union animus. *Medeco Sec. Locks*, 142 F.3d at 742. Relying on credibility determinations, the ALJ found that Van Johnson, a company vice president, had decided to terminate both Pugh and Akers before each was called into his office to discuss his infraction and discipline. This predetermination raises the inference that the infractions offered as reasons for their terminations were pretextual. Furthermore, the ALJ found that Pugh had only been asked to leave the plant, not the company property. He was therefore not disobeying any instructions when he later returned to the parking lot. This suggests that Hancock's explanation for his discharge, insubordination, was pretextual.

Proof that an employer has selectively enforced rules against union supporters or terminated union supporters for breaking rules that others have broken without being fired also shows anti-union animus. *See Montgomery Ward & Co., Inc. v. NLRB*, 97 F.3d 1448 (table), 1996 WL 532744, at *5 (4th Cir.), *citing Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 813-15 (3d Cir. 1986); *see also Amer. Thread Co. v. NLRB*, 631 F.2d 316, 319-22 (4th Cir. 1980). Pugh and Akers were fired because they violated a company rule barring employees from the plant when they are not on shift, except for thirty minutes at the beginning and end of the shift. The ALJ found that employees regularly stayed longer than that without discipline, let alone termination. The ALJ also found that other employees came to the plant outside of their shifts and used company equipment for personal projects. Sometimes these employees had permission, sometimes they did not. None were disciplined. Overall, then, the ALJ's, and therefore the Board's, finding that Hancock knew of the union activities of Pugh and Akers and that the employees' terminations were motivated by anti-union animus was supported by substantial evidence. We therefore uphold the Board's conclusion that the terminations violated § 8(a)(3) of the NLRA.

IV.

In sum, the Board's determinations that Hancock's threats violated § 8(a)(1) twice and that the firings of Akers and Pugh violated

§ 8(a)(3) are supported by substantial evidence. We therefore deny the company's petition for review and grant enforcement of the Board's order.

*PETITION FOR REVIEW DENIED*
*AND ENFORCEMENT GRANTED*